```
              UNITED STATES DISTRICT COURT
                       FOR THE
                  DISTRICT OF VERMONT
                                    :
HEATH KNOLLS INVESTMENTS, INC       :
and DAVID REISS,                    :
     Plaintiffs,                    :
                                    :
     v.                             :    No. 2:07-cv-049
                                    :
WESTLAKE RESIDENTIAL PARTNERS,      :
LLC and RETROVEST ASSOCIATES,       :
INC.,                               :
     Defendants.                    :
                                    :
```

### Opinion and Order

This action involves a dispute over the financing contingency clause in a contract for the purchase and sale of two condominium units located in the Westlake residential condominium development in Burlington, Vermont. Defendants have moved for summary judgment on all counts of Plaintiffs' complaint and Defendants' counterclaim. For the reasons that follow, Defendants' Motion for Summary Judgment (Doc. 27) is GRANTED IN PART AND DENIED IN PART.

### I.  Background

The following facts are undisputed except where otherwise indicated. On August 31, 2005, David Reiss, as CEO of Plaintiff Heath Knolls Investments, Inc., entered into a purchase and sale contract ("Contract") with Westlake Residential Partners, LLC ("Westlake") for the purchase of two condominium units, located in the Westlake residential condominium development in Burlington, Vermont, for $970,000. The units were to be sold as

"shells" and the Contract required the Plaintiffs to contract with Yandow/Dousevicz Construction for the interior "fit-ups." The Contract stated a closing date of April 2006.  The financing contingency clause in the Contract provides in relevant part:

> Purchaser's obligation under this contract is subject to a financing contingency that Purchaser obtain mortgage financing [under specified terms]. . . . Purchaser agrees to act diligently and in good faith to obtain such financing and shall . . . submit a complete and accurate application for mortgage financing to at least one financial institution . . . .  If Purchaser fails to timely submit such an application, this financing contingency is waived by the Purchaser.  IF, DESPITE BEST EFFORTS, PURCHASER IS UNABLE TO OBTAIN THE FINANCING SPECIFIED IN THIS CONTRACT WITHIN 21 DAYS AFTER PURCHASER HAS RECEIVED A COPY OF THE CONTRACT SIGNED BY SELLER, PURCHASER SHALL HAVE THE RIGHT TO RESCIND THIS CONTRACT, PROVIDED, HOWEVER, PURCHASER GIVES WRITTEN NOTICE TO SELLER OF THE INABILITY TO OBTAIN SUCH FINANCING WITHIN 3 WORKING DAYS AFTER THE ABOVE DATE.

Reiss paid a ten percent deposit of $97,000, in two installments of $40,000 and $57,000, on May 16, 2005, and August 29, 2005, respectively.  The Contract provided that Westlake may retain the deposit money as liquidated damages "[i]f Purchaser shall fail to complete [the] purchase as provides herein, or is otherwise in default."  The deposit was held by an escrow agent, Defendant Retrovest Associates, Inc.

Reiss applied to Chittenden Bank for mortgage financing and was pre-approved for mortgage financing in the amount of $880,000 on September 2, 2005.  By letter dated March 27, 2006,

Reiss received a commitment letter for a loan in the amount of $816,400.  The commitment letter was to expire on July 1, 2006.  It provided that "updating of credit documents [would] be required" if the closing did not occur by July 1, 2006.

On April 8, 2006, Reiss and Westlake executed an amendment to the Contract which changed the closing date to July 2006.  On May 18, 2006, Reiss and Westlake executed a second amendment which stated a closing date of July 26, 2006.  Other than modifying the closing date, the amendments preserved all other terms and provisions of the Contract.

On July 11, 2006, Chittenden Bank requested updated financial information from Reiss.  On August 8, 2006, Chittenden Bank notified Reiss that it would not provide mortgage financing based on Reiss' "excess obligations in relation to income."  Reiss alleges that he was unaware that his financing was in jeopardy as he had kept Chittenden Bank informed of his financial situation prior to the request dated July 11, 2006.  Reiss subsequently attempted to obtain mortgage financing from other banks but was unable to do so.  Reiss informed Defendant Westlake that Chittenden Bank had withdrawn its loan commitment.  On August 15, 2006, Westlake advised Reiss that it would agree to extend the closing date if Reiss could obtain a financial commitment by August 28, 2006, as well as pay an additional nonrefundable deposit of $48,500 and $18,496 as carrying costs

at 12% interest.  Reiss found these terms unacceptable, and a closing never took place.  On August 28, 2006, Defendants notified Plaintiff Reiss via email that he was in default of the contract and stated their intent to retain the $97,000 deposit.

The parties dispute the date Reiss first requested that Westlake return the deposit.  Plaintiffs assert that Reiss first requested the return of the deposit during conversations and emails with Defendant Westlake between August 24 and August 28, 2006.  (Pls.' Resp. to Reqs. to Admit and Interrogs. ¶ 14.) Reiss admits that he did not provide written notice of his request until November 1, 2006  (Pls.' Resp. to Reqs. to Admit and Interrogs. ¶ 15); however, Reiss denies that the November 1, 2006, letter was the first time he requested the return of his deposit.

Plaintiffs filed a complaint against Defendants on March 1, 2007, claiming breach of contract and unjust enrichment. Defendants filed a counterclaim for breach of contract on March 23, 2007.

## II.  Discussion

*A. Legal Standard for Summary Judgment*

Under Fed. R. Civ. P. 56(c), summary judgment is appropriate if the offered evidence shows no genuine issue of material fact and the moving party is entitled to judgment as a matter of law.  The burden is on the moving party to demonstrate

4

the absence of a genuine issue of material fact, and in considering the motion, the Court must resolve all ambiguities and draw all inferences in favor of the nonmoving party. *Ocean Ships, Inc. v. Stiles*, 315 F.3d 111, 117 (2d Cir.2002) (citing *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 255 (1986)).  Once the moving party has met its burden, the nonmoving party "may not rest upon the mere allegations or denials of the adverse party's pleading," but must "set forth specific facts showing that there is a genuine issue for trial." Fed.R.Civ.P. 56(e).

"Summary judgment is generally proper in a contract dispute only if the language of the contract is wholly unambiguous." *Compagnie Financiere de CIC et de L'Union Europeenne v. Merrill Lynch, Pierce, Fenner & Smith, Inc.*, 232 F.3d 153, 157 (2d Cir. 2000).  A contract is unambiguous "[i]f [the] terms have a definite and precise meaning and are not reasonably susceptible to differing interpretations." *Scholastic, Inc. v. Harris*, 259 F.3d 73, 83 (2d Cir. 2001).  However, "[w]hen the language of a contract is ambiguous and there is relevant extrinsic evidence regarding the actual intent of the parties, an issue of fact is presented for a jury to resolve, thereby precluding summary judgment." *Id*.  "Contract language is ambiguous if it is capable of more than one meaning when viewed objectively by a reasonably intelligent person who has examined the context of

the entire integrated agreement." *Sayers v. Rochester Tel. Corp. Supplemental Mgmt. Pension Plan*, 7 F.3d 1091, 1094 (2d Cir. 1993) (internal quotation marks omitted).

*B.  Breach of Contract Claim*

It is undisputed that Reiss "diligently and in good faith" sought and subsequently obtained financing from Chittenden Bank. However, Defendants argue that Reiss is in breach because he "did not provide notice of his inability to obtain financing until after July 11, 2006, or well after the deadline for him to exercise his rights under the financial contingency provision even if measured from the last reasonable date." (Defs.' Mot. 8.)  Of course, Reiss had no reason to notify Westlake of an inability to obtain financing within twenty-four days (the time period specified in the limitation provision) of his receipt of the signed Contract: at that time Reiss had received pre-approval from Chittenden Bank.  It was not until August 8, 2006, nearly a year after the original pre-approval, that Chittenden Bank informed Reiss that his financing was being revoked.

Vermont courts have not had occasion to confront cases in which a purchaser seeks return of his deposit based on a revocation of financing after the contingency period has expired; however, New York courts frequently have.  The Court notes that a number of New York cases have addressed the applicability of time limitations in financing contingency

6

clauses to very similar circumstances.  *See Kapur v. Stiefel*, 695 N.Y.S.2d 330 (N.Y. App. Div. 1999); *Sciales v. Foulke,* 630 N.Y.S.2d 325, 326 (N.Y. App. Div. Div. 1995); *Creighton v. Milbauer*, 594 N.Y.S.2d 185 (N.Y. App. Div. 1993); *Lunning v. 10 Bleeker Street Owners Corp.*, 553 N.Y.S.2d 148 (N.Y. App. Div. 1990); *Lane v. Elmwood Estates*, 298 N.Y.S.2d 751 (N.Y. App. Div. 1969).  In these cases, New York courts have consistently held that limitation provisions similar to the one in the instant contract do not bar purchasers from claiming a return of their deposits.  *See, e.g., Kapur*, 695 N.Y.S.2d  at 331.

The Court finds that summary judgment is improper on Plaintiffs' breach of contract claim and Defendants' breach of contract counterclaim because the Contract is ambiguous.  In particular, the Contract fails to make clear whether or to what extent the financing contingency applies in the circumstances presented here.  The financing contingency clause clearly includes a provision which limits the time frame within which the purchaser may exercise his right to rescind.  However, the limitation provision only applies by its express terms if the purchaser is unable to obtain financing within twenty-one days of his receipt of the signed contract.

The Court recognizes that Defendants may not have intended to give Reiss an unlimited time frame in which to invoke the financing contingency to excuse his performance and rescind the

7

Contract. However, the express terms of the limitation provision are silent on the legal consequences of a revocation of the original financing commitment after the expiration of the rescission deadline. Therefore, questions of fact exist regarding whether the 24-day rescission period applies under the circumstances in this case. If the rescission period does apply, additional questions of fact exist as to the date from which the rescission period begins to run. Further factual development is necessary to determine whether or to what extent a limitation on Reiss's right to rescind is applicable under these circumstances.

Second, in the event that a limitation on Reiss's right to rescind is found not to apply, additional questions of fact exist as to whether Reiss's loss of financing is attributable to bad faith on his part. *See Garber v. Giordani*, 791 N.Y.S.2d 175, 176 (App. Div. 2005) (holding that summary judgment was precluded because genuine issues of material fact existed as to whether it was purchaser's fault that lender revoked mortgage financing); *Kapur,* 695 N.Y.S.2d at 331 (holding that the purchaser's right to return of the deposit "turns ... upon whether the commitment revocation and consequent failure of the transaction was attributable to bad faith on the [purchaser's] part"); *Sciales,* 630 N.Y.S.2d at 326 (N.Y. App. Div. Div. 1995) ("As long as purchasers exert a genuine effort to secure

mortgage financing and act in good faith, they are entitled to recover their down payment if the mortgage is not in fact approved through no fault of their own."); *Lunning*, 553 N.Y.S.2d at 148("When a condition of a mortgage loan commitment is not fulfilled through no fault of the purchasers, their performance is excused, so long as they acted in good faith.").

The parties dispute who is at fault for Reiss's loss of financing.  Defendants contend that "Reiss lost his financing through his own negligence by compromising his credit."  (Defs.' Mot. for Summ. J. 9.)  Conversely, Plaintiffs claim that Reiss acted "diligently and in good faith" at all times.  Plaintiffs allege that Chittenden Bank had been fully informed, prior to the expiration of the financing commitment, of the debt Reiss had incurred as a result of renovating his California residence in preparation for its sale.  (Pls.' Statement of Additional Material Facts ¶ 42.)  Plaintiffs further allege that up until Defendants declared Plaintiffs in default on August 15, 2006, Reiss continued to seek alternative financing.   (Statement 41.)  Plaintiffs argue that Defendants are to blame for the failure of the transaction because "Westlake caused Reiss's financing to become unavailable by postponing the closing beyond Reiss's financing commitment date." (Pls.' Compl. 5)  In his affidavit, Reiss states that it was his understanding that the

closing date had been postponed due to delays in construction. (Reiss Aff. ¶ 9.)[1]

The parties have offered differing accounts of who is at fault for Reiss's inability to close. Resolution of these material factual disputes is not appropriate on a motion for summary judgment. In sum, the Court finds that summary judgment is improper for two primary reasons: (1) the Contract does not make clear whether or to what extent the limitation provision in the financing contingency applies under the circumstances presented in this case; and (2) assuming that a limitation on Reiss's right to rescind does not apply, questions of fact exist regarding whether the revocation of financing is attributable to Reiss's bad faith.

C.  *Unjust Enrichment Claim*

Plaintiffs claim that because Westlake's damages do not exceed the deposit "it would be inequitable for the Court to enforce the liquidated damages provision against Dr. Reiss." (Pls.' Opp'n 8.) Plaintiffs dispute the actual losses suffered

---

[1] Defendants argue that the Court cannot consider Plaintiff Reiss's affidavit and Plaintiffs' Statement of Additional Material Facts based thereon because the affidavit is unsigned and unsworn. However, it is within the Court's discretion to consider the affidavit, and in light of the fact that Plaintiffs' Opposition to Defendants Motion for Summary Judgment is based almost entirely upon Plaintiff Reiss's affidavit, it would be inequitable for the Court to disregard the affidavit based on a technical error. *See, e.g.*, *Fontanez v. Thompson*, No. 00 Civ. 2090, 2003 WL 1964052 at *1 n.2 (S.D.N.Y. April 24, 2003) (deciding to consider four unsworn and unsigned affidavits of the nonmoving party in ruling on summary judgment motion).

10

by Westlake as a result of Reiss's inability to close on the Contract.  Plaintiffs argue that Westlake has not suffered any loss or damage, and note that other courts have held that where a seller's actual damages do not exceed the value of the deposit to be retained as liquidated damages, the seller is only entitled to retain up to the amount of actual damages.

In Vermont, as long as the liquidated damages provision is reasonable and enforceable, the seller is entitled to retain the full amount specified therein, regardless of actual losses suffered.  *Renaudette v. Barret Trucking Co.*, 712 A.2d 387, 389 (Vt. 1998).  While the case law in Vermont on the topic of reasonable liquidated damages amounts is sparse, the Vermont Supreme Court has indicated that a ten percent deposit is a reasonable amount for liquidated damages.  *Id*.  In *Renaudette*, the Supreme Court outlined three criteria which must be met in order for a liquidated damages provision to be reasonable and enforceable:

> (1) [B]ecause of the nature or subject matter of the agreement, damages arising from a breach would be difficult to calculate accurately; (2) the sum fixed as liquidated damages must reflect a reasonable estimate of likely damages; and (3) the provision must be intended solely to compensate the nonbreaching party and not as a penalty for breach or as an incentive to perform.

*Id*. at 388 (quoting *New England Training Serv., Inc. v. Silver St. P'ship*, 595 A.2d 1341, 1346 (Vt. 1991)).

11

The Court held that real estate contracts fulfill the first criterion because "damages incurred from a breach of a real estate contract are hard to anticipate." *Id*. at 389. As to the second and third criteria, the Court stated that "if the liquidated damages provision is reasonable at the time the contract is entered into, then it should be considered compensation for the breach and not a penalty or incentive to perform." *Id*. The Court found that the 2.3 percent deposit paid by the plaintiffs was reasonable because it was "well within the range of liquidated damages clauses which have been determined to be reasonable in other jurisdictions;" *Renaudette*, 712 A.2d at 389. The Court went on to note that "[d]own payments of up to ten percent of the price are common in many locations and have been validated by courts as an acceptable amount for liquidated damages." *Id*. (citing 14 Powell & Rohan, Powell on Real Property ¶ 88(2)(d), at 81-225).

Under the *Renaudette* criteria, the liquidated damages provision in this case is reasonable and enforceable. Therefore, if Plaintiffs were in breach of the Contract *and* Westlake had not contributed to the failure of the transaction, Westlake would be entitled to retain the entire $97,000 deposit irrespective of Westlake's actual losses. Thus, the Court finds that the disputed amount of Defendants' actual losses does not create a genuine issue of material fact precluding summary judgment on Plaintiffs' unjust enrichment claim.

## IV. Conclusion

For the reasons set forth above, Defendants' Motion for Summary Judgment (Doc. 27) is GRANTED as to Plaintiffs' unjust enrichment claim, and is otherwise DENIED.

Dated at Burlington, Vermont this 24th day of April, 2008.

/s/ William K. Sessions III
William K. Sessions III
Chief Judge